UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC EL, | No. 2:17-cv-00463-KJM-CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MICHAEL MARTEL, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This action proceeds on the third amended complaint in which plaintiff alleges that Certified Nursing Assistants Mendoza and Perales, and Doctor Manohar, all defendants employed at the California Health Care Facility[1], were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. ECF No. 25. Currently pending before the court are defendants' motion for summary judgment as well as plaintiff's cross-motion for summary judgment. ECF Nos. 56, 60.

**I.      Allegations in the Third Amended Complaint**

On the morning of July 6, 2016, while an inmate at CHCF, plaintiff asked for assistance in getting out of his bed and into his wheelchair from defendants Mendoza and Perales who were

---

[1] Hereinafter referred to as "CHCF."

1

1   both Certified Nursing Assistants.² ECF No. 25 at 3.  However, once C.N.A. Mendoza and

2   C.N.A. Perales arrived at his cell, they both "said no" and told plaintiff to try it by himself.  Id.

3   Plaintiff fell to the floor and injured himself while trying to transfer himself to his wheelchair.

4   Plaintiff also alleges that defendant Dr. Manohar ignored his injuries which included "bad

5   headaches" and difficulty "remembering things."  ECF No. 25 at 4.  According to plaintiff, Dr.

6   Manohar did not send him to a "head specialist" or a psychologist for his head injuries.  Id.

7   **II.     Motion for Summary Judgment**

8   In their motion for summary judgment, defendants Mendoza and Perales assert that rather

9   than waiting for them to come to his cell, plaintiff tried to transfer to his wheelchair without any

10  assistance after waiting only a few minutes for help.  ECF No. 56-1 at 6.  Defendant Manohar

11  contends that the undisputed evidence establishes that she was not deliberately indifferent to

12  plaintiff's medical needs because he received appropriate treatment following his fall.  ECF No.

13  56-1 at 7-8.  A mere difference of opinion about the medical care that plaintiff received is not

14  sufficient to establish an Eighth Amendment violation.  ECF No. 56-1 at 7-8.

15  Plaintiff filed a cross-motion for summary judgment asserting that defendants were aware

16  of his serious medical need for ongoing treatment and failed to respond to his request for

17  assistance on the morning of his fall.³  However, contrary to the Local Rules, plaintiff did not file

18  a separate statement of undisputed facts in support of his motion for summary judgment.  See

19  Local Rule 260(a).  Merely captioning the pleading as a motion for summary judgment does not

20  relieve plaintiff of his responsibility to comply with the Local Rules.  Therefore, the court will

21  construe plaintiff's motion as his opposition to plaintiffs' motion for summary judgment.

22  In this opposition, plaintiff asserts that defendants never instructed him not to use the

---

² Hereinafter referred to as a "C.N.A."

³ It appears to the court that plaintiff is attempting to transform his Eighth Amendment deliberate indifference claim into a separate claim for violating the Americans with Disabilities Act or "A.D.A."  ECF No. 60 at 12.  However, the court's screening order of April 18, 2019 makes it clear that plaintiff's claims against defendants Manohar, Mendoza and Perales were "sufficient at the screening stage to state an Eighth Amendment claim of deliberate indifference to plaintiff's serious medical needs."  ECF No. 26 at 2.  Therefore, this case is not proceeding on any A.D.A. claim.

2

1  transfer board on his own. ECF No. 60 at 2.[4] Plaintiff disputes defendants' assertion that he was
2  not in pain, alleging that Dr. Manohar did not have the proper equipment to assess his pain level.
3  ECF No. 60 at 19. Additionally, plaintiff indicates that defendant Manohar did not treat his
4  injuries until 7 days after the accident. Id. at 18-19. As evidence of defendants' deliberate
5  indifference to his serious medical needs, plaintiff lists CDCR rules and regulations that
6  defendants violated. ECF No. 60 at 9, 11, 23.

Defendants filed an opposition to plaintiff's cross-motion for summary judgment. ECF
No. 64. Because the court has construed plaintiff's cross-summary judgment motion as an
opposition, however, the court will construe defendants' pleading as a reply thereto. Defendants
point out that it is undisputed that plaintiff attempted without any assistance to use his transfer
board to move from his bed into his wheelchair and then fell to the floor. ECF No. 64 at 2.
Defendants Mendoza and Perales dispute that plaintiff asked them to assist him in transferring to
his wheelchair on the morning of July 6, 2016. Id. Following her examination of plaintiff on July
12, 2016, defendant Manohar did not find any objective evidence that plaintiff was suffering from
any headaches, memory problems, or injuries related to the fall that required further treatment.
Id. at 3.

**III.    Legal Standards**

    **A.  Summary Judgment Standards Under Rule 56**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion,

---

[4] Plaintiff swore, under penalty of perjury, that the allegations in this motion were true.

3

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

4

1    obligation to produce a factual predicate from which the inference may be drawn.  See Richards

2    v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

3    (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

4    simply show that there is some metaphysical doubt as to the material facts....Where the record

5    taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

        **B.**     **Deliberate Indifference to a Serious Medical Need**

8        Denial or delay of medical care for a prisoner's serious medical needs may constitute a

9    violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S.

10   97, 104–05 (1976).  An individual is liable for such a violation only when the individual is

11   deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d

12   1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

13   Smith, 203 F.3d 1122, 1131–32 (9th Cir. 2000).

14       In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439

15   F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other

16   grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the

17   plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's

18   condition could result in further significant injury or the 'unnecessary and wanton infliction of

19   pain.'"  Id., citing Estelle, 429 U.S. at 104.  "Examples of serious medical needs include '[t]he

20   existence of an injury that a reasonable doctor or patient would find important and worthy of

21   comment or treatment; the presence of a medical condition that significantly affects an

22   individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F.3d at

23   1131–1132, citing McGuckin, 974 F.2d at 1059–60.

24       Second, the plaintiff must show the defendant's response to the need was deliberately

25   indifferent.  Jett, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act

26   or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

27   indifference.  Id.  Under this standard, the prison official must not only "be aware of facts from

28   which the inference could be drawn that a substantial risk of serious harm exists," but that person

"must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  Id. at 839.  A showing of merely negligent medical care is not enough to establish a constitutional violation.  Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105–106.  A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference."  Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case."  Hallett, 296 F.3d at 745–46; see McGuckin, 974 F.2d at 1060.

**IV.     Statement of Undisputed Facts**

Plaintiff is a mobility-impaired inmate who requires the use of a wheelchair.[5]  ECF No. 56-1 at ¶ 1 (Defendants' Statement of Undisputed Facts) (hereinafter "DSUF").  In order to move from his bed to his wheelchair, plaintiff uses a wooden transfer board that is approximately 8" wide by 24" long.  DSUF at ¶ 2.

At all times relevant to the allegations in the third amended complaint, defendants Mendoza and Perales were employed as Certified Nursing Assistants at the California Health Care Facility in Stockton.  ECF No. 56-5 at 1 (Mendoza Declaration); ECF No. 56-6 at 1 (Perales Declaration).  Their responsibilities included assisting inmates, including plaintiff, with their basic daily activities "such as bathing, dressing, and getting into and out of bed."  ECF Nos. 56-5 at 1, 56-6 at 1.

While in his cell on July 6, 2016, plaintiff called out for assistance from defendant Mendoza first, and then to defendant Perales approximately five minutes later.  DSUF at ¶ 3.  At

---

[5] All facts are undisputed unless otherwise indicated.

6

the time, defendants Mendoza and Perales were located approximately 25 feet outside of plaintiff's cell. DSUF at ¶ 4. According to plaintiff, Mendoza and Perales were engaged in a conversation, but verbally indicated that they would be there to help plaintiff. ECF No. 56-7 at 9-10 (Plaintiff's Deposition). Defendants Mendoza and Perales have no memory of plaintiff's request for assistance on that date. DSUF at ¶ 8. According to defendants, they would have assisted plaintiff in transferring to his wheelchair had they heard his request. DSUF at ¶ 9. Plaintiff then attempted to use the transfer board by himself in order to move from his bed to his wheelchair, but he fell to the floor in the process. DSUF at ¶ 6. Neither Mendoza or Perales were in plaintiff's cell when he fell and the fall was not observed by any witness. DS&F at ¶ 7. According to plaintiff, he would not have fallen and injured himself had defendants Mendoza and Perales been in the room. ECF No. 56-7 at 12. Both defendants had assisted plaintiff into his wheelchair on prior occasions, and this was the first occasion on which plaintiff tried to get into his wheelchair on his own. DSUF at ¶ 11.

Defendant Manohar was employed as a Physician and Surgeon at CHCF during the relevant time frame. ECF No. 56-3 at 1 (Manohar Declaration). In this capacity, defendant Manohar provided medical care to inmates, including plaintiff. Id. On the morning of July 6, 2016, defendant Manohar received a telephone call from CHCF nursing staff informing her that plaintiff had fallen and hit his head and was complaining that he had hurt his neck and back. DSUF at ¶ 12. During this conversation, defendant Manohar was told that plaintiff had already been placed in a neck brace and was currently in the prison's emergency room. DSUF at ¶ 14. When an inmate complains of neck and back injuries resulting from a fall, medical standards of care include placing the patient in a neck brace and referring the individual to an outside hospital for further evaluation. DSUF at ¶ 13. A neck brace is used so that the injury is not exacerbated by further movement. DSUF at ¶ 13. Defendant Manohar ordered that plaintiff be transferred to San Joaquin General Hospital to further evaluate his injuries. DSUF at ¶ 15.

Hospital staff diagnosed plaintiff with a cervical strain and a lumbar contusion as a result of his fall. DSUF at ¶ 16. He was discharged from the hospital in stable condition on the same day as his treatment. DSUF at ¶ 17. When plaintiff was transferred back to CHCF, he denied any

current medical concerns and stated, "I feel better." DSUF at ¶ 18.

At plaintiff's follow-up appointment on July 12, 2016, defendant Manohar indicated that plaintiff had a history of chronic pain in his extremities and offered to prescribe him Neurontin for pain relief. DSUF at ¶ 19. Plaintiff declined this medication and requested Tylenol-3 for pain relief instead. DSUF at ¶ 19. Defendant Manohar counseled plaintiff that Tylenol-3 "is not a good choice" and has "no proven benefit" for his type of pain. ECF No. 56-3 at 7; DSUF at ¶ 19. As a result, defendant Manohar did not prescribe Tylenol-3 to plaintiff. Id. Based on her examination of plaintiff, there was no medical indication that he was suffering from any headaches, memory problems, or injuries related to his fall on July 6, 2016. DSUF at ¶ 20. Defendant Manohar concluded that no further medical care was necessary related to his fall. DSUF at ¶ 20.

Defendant Manohar next examined plaintiff on July 20, 2016. DSUF at ¶ 21. Once again, plaintiff did not show any objective indications that he was experiencing chronic pain. DSUF at ¶ 21. Defendant Manohar found no clinical indication that plaintiff was still suffering from any injuries related to his fall two weeks earlier, or that any further medical care related to the fall was necessary. DSUF at ¶ 21.

The next day plaintiff was examined by Dr. Johl who diagnosed plaintiff as suffering from chronic pain syndrome. DSUF at ¶ 22. According to Dr. Johl, plaintiff was "very vocal and demanding pain meds in the form of [n]arcotics and especially [o]piates." ECF No. 56-4 at 30 (Provider/Inter-Disciplinary Progress Note dated 7/21/16). Dr. Johl concluded based on his interview and examination of plaintiff that he was not in "any distress from pain, [and] there is currently no [medical] indication for narcotics." ECF No. 56-4 at 30.

On August 31, 2016, plaintiff was examined by defendant Manohar who noted his ongoing diagnosis of chronic extremity pain. ECF No. 56-3 at 15 (Provider/Inter-Disciplinary Progress Note dated 8/31/16); DSUF at ¶ 24. However, defendant Manohar found no clinical evidence that plaintiff was still suffering from any injuries related to the fall on July 6, 2016 or that any further medical care was necessary for that fall. DSUF at ¶ 24.

/////

### V. Analysis

The undersigned finds that defendants have met their initial burden of informing the court of the basis for their motion and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his deliberate indifference claims. See Matsushita Elec. Indus., 475 U.S. at 586 (1986). The court has reviewed plaintiff's verified complaint and his opposition to defendants' pending motion. Drawing all reasonable inferences from the evidence submitted in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence at the summary judgment stage to create a genuine issue of material fact with respect to his claim that defendants violated his rights under the Eighth Amendment.

In this case, the undisputed evidence demonstrates that defendants Mendoza and Perales delayed in assisting plaintiff with transferring to his wheelchair on one occasion. This amounts, at most, to an isolated incident of negligence on the part of these defendants. That is far from establishing an Eighth Amendment violation due to deliberate indifference of a serious medical need. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (stating that generally, "delay in providing a prisoner" with medical care, "standing alone, does not constitute an eighth amendment violation.") (citation omitted). "[I]solated occurrences of neglect," as well as "mere malpractice, or even gross negligence," may be inexcusable, but they do not amount to deliberate indifference. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (citation omitted). As a result, the undersigned recommends granting summary judgment in favor of defendants Mendoza and Perales.

Plaintiff also has not submitted sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant Manohar responded to any serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106. First and foremost, there is no genuine issue of material fact demonstrating that plaintiff had a serious medical need for any further treatment for injuries sustained as a result of the fall upon his return from San Joaquin General Hospital. Plaintiff was treated on several occasions in the weeks after

his fall, yet there is no genuine issue of material fact demonstrating deliberate indifference.

To the extent that the undisputed material facts demonstrate a difference of opinion on the type of pain medication given to plaintiff, this does not rise to the level of a constitutional violation. "In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (affirming summary judgment where evidence showed difference of medical opinion as to choice of one drug over another); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837). In this case, plaintiff has not provided any evidence demonstrating that defendant Manohar's decision to offer him Neurontin for his chronic pain was medically unacceptable under the circumstances. Even when plaintiff was examined by Dr. Johl, he was not prescribed with Tylenol-3. Defendant Manohar was not deliberately indifferent based upon her refusal to provide plaintiff with the specific type of pain medication that he wanted, i.e. Tylenol 3, rather than the type of pain medication that was clinically indicated, i.e. Neurontin. As a result, defendant Manohar is entitled to summary judgment.

Plaintiff's attempt to establish a triable issue of fact based upon the failure to follow CDCR guidelines also fails. Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)); Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation") (citation omitted). As previously stated, Section 1983 does not offer redress for a violation of "a state-created interest that reaches beyond that guaranteed by the federal Constitution." Sweaney, 119 F.3d at 1391. Additionally, "state departmental regulations do not establish a federal constitutional violation." Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009). The issue is whether defendants were deliberately indifferent to plaintiff's serious medical needs. This is not

established based upon failure to comply with CDCR guidelines for providing medical treatment. Because there is no genuine issue of material fact with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs, defendants' motion for summary judgment should be granted.

### VI. Plain Language Summary for Pro Se Party

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motion for summary judgment, as well as the evidence submitted by the parties, and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial. You have twenty-one days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations."

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's cross-motion for summary judgment (ECF No. 60) is construed as an opposition to defendants' motion based on his failure to comply with Local Rule 260(a) and is therefore deemed resolved.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment ( ECF No. 56) be granted;

2. Judgment be entered in defendants' favor; and,

3. The clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

/////

/////

/////

/////

objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 28, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/el0463.msj.cjra.docx